UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID SCHEPERS, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:09-cv-1324 TWP-TAB |
| ) | |
| COMMISSIONER, INDIANA ) | |
| DEPARTMENT OF CORRECTION, ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case comes before the Court on Plaintiff's Motion for Summary Judgment. The Plaintiff, David Schepers ("Plaintiff" or "Schepers"), brings a class action suit against the Commissioner, Indiana Department of Corrections ("IDOC"). Schepers filed suit in this Court alleging a civil rights violation pursuant to 42 U.S.C. § 1983. A class was certified in this case, defined as "all persons who are required to register on Indiana's sex and violent offender registry." (Dkt. 27). Schepers alleges the IDOC violated the Due Process Clause of the Fourteenth Amendment by failing to provide him with a sufficient administrative procedure to challenge alleged factual errors contained on the Indiana Sex and Violent Offender Registry ("Registry"). Schepers seeks declaratory and injunctive relief against the IDOC for mistakenly designating him as a sexually violent predator and a violent offender without providing an administrative appeal process, even though he was never convicted or adjudicated as such an offender. IDOC denies these allegations, arguing that there is a constitutionally sufficient administrative procedure to appeal Registry errors. For the reasons set forth below, Plaintiff's Motion for Summary Judgment (Dkt. 35) is **DENIED.**

# I. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

# II. BACKGROUND

**A.      Indiana Sex and Violent Offender Registry**

As way of background, the Indiana General Assembly adopted a sex offender registration act which imposes both registration and notification requirements on individuals designated as

sex or violent offenders. *See generally* Ind. Code § 11-8-8-1. Under this act, sex offenders or violent offenders were required to take affirmative steps to notify local law enforcement authorities of their location as well as provide the authorities with information that would be disseminated to the public. Ind. Code § 11-8-8-4. Upon notifying the local law enforcement authorities of their location, a sex or violent offender must register a wide range of information, including: a recent photograph of the offender; the offender's principal residence; the offender's date of birth; the offender's physical characteristics; a description of the particular offense for which the sex offender was convicted; whether the sex offender is a sexually violent predator; whether the sex offender is required to register for life; the sex offender's electronic mail address; and any other information required by the IDOC. Ind. Code § 11-8-8-8.

In addition to providing the necessary information for proper identification purposes, prisoners convicted of sexual offenses who are about to re-enter society are obligated to register with local law enforcement on the Registry.[1] Ind. Code § 11-8-8-13. Prior to a convicted criminal's release from IDOC custody, the IDOC determines whether the convicted criminal is required to register as a sex or violent offender or a sexually violent predator based upon information available to the IDOC.[2] After the classification is made, the IDOC then determines the length of registration that will be applied to the offender. However, the length of time in which a sex offender has a duty to register varies, depending on the label attached to the registrant by the IDOC.[3] Additionally, under Indiana law, criminals convicted of certain sexual

---

[1] As of July 1, 2010, the IDOC no longer controls the Registry website. The website is implemented and maintained by the Indiana Sheriff's Association pursuant to a contractual agreement (Dkt. 47 at 6).

[2] If a sex offender is not confined within the IDOC, information received by the IDOC from a supervisory authority, such as a probation department or from other authorities in other jurisdictions, will be transmitted to the Indiana Sheriff's Association or a local sheriff (Dkt. 47 at 6).

[3] A person labeled as a sex offender or a violent offender is required to register with local law enforcement authority at least one time per year. However, a sex offender who is a sexually violent predator is required to register every 90 days with local law enforcement authorities for life. Ind. Code § 11-8-8-19.

3

offenses that classify them as "sexually violent predators" or "offenders against children" will have elevated registration and notification requirements as well as restrictions imposed upon them due to their Registry status.

### B.     David Schepers' Registry Listing

For the most part, the material facts in this case are undisputed. However, where disputes occur, the facts and all inferences to be drawn therefrom will be presented in the light most favorable to the non-moving party, in this case the IDOC. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000). Schepers, was convicted twice of sex offenses – rape in 1987 and two counts of child exploitation in 2006. Because of his sexual convictions, the IDOC classified him as a sexually violent predator. Schepers was required to register as a violent offender on the Registry. The Registry, however, mistakenly listed Schepers as being convicted of two rapes in 1987, instead of only one rape. Because Schepers was classified as a sexually violent predator, he was required under law to register with the local law enforcement authorities every ninety days for life.

Schepers believed that he was not properly listed as a sexually violent predator because he did not satisfy the requirements of Indiana Code § 35-38-1-7.5(b). In addition, Schepers believed he was improperly classified as a violent offender because he was never convicted of murder, voluntary manslaughter, conspiracy to commit murder or manslaughter, or attempted murder or manslaughter. Schepers contacted the IDOC about his Registry listing, but his classification as a sexually violent predator and violent offender remained unchanged.[4] However, at some point in the beginning of 2010, the IDOC staff reviewed Schepers' registry

---

[4] The IDOC asserts that the only correspondence it received from Schepers pertained to his requirement to register pursuant to *Wallace v. State*, 905 N.E.2d 571 (Ind. 2009) and that he did not state that there were factual errors in his Registry listing (Dkt. 47 at 5).

listing and determined that Schepers was erroneously characterized as a sexually violent predator and a violent offender and removed those designations from the Registry. In addition, the IDOC removed information from the Registry stating that Schepers was convicted of a second rape in 1987.

**C.     The Sex and Violent Offender Registry Appeal Process**

Prior to this lawsuit, the IDOC maintained an informal process in regards to registrants challenging factual errors on the Registry. In the past, registrants would be able to contact the IDOC by telephone and discuss with the IDOC any complaints they may have regarding their Registry listing. However, on May 1, 2011, after the filing of this lawsuit, the IDOC adopted a new administrative procedure called the "Sex and Violent Offender Registry Appeal Process," which would provide registrants with a formal process to challenge alleged errors associated with Registry information (Dkt. 53-2). Under the appeal process, a registrant would be given notice of his or her right to appeal information that will be placed on the Registry by the IDOC and another document containing a photocopy of the information to be transmitted to law enforcement by the IDOC. After receiving the two forms, a registrant may file a written appeal to the Division of Registration and Victim Services. The written appeal would then be reviewed by an appeal authority and a decision subsequently would be rendered on the appeal.

### III. DISCUSSION

Schepers, on behalf of the class, alleges the IDOC violated his and the class members procedural due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 by failing to provide him or the class with any administrative process to challenge any factual errors regarding a registrant's listing as a particular offender contained on the Registry. Specifically, Schepers asserts the IDOC erroneously listed him as a violent offender and a sexually violent

predator on the Registry without providing any procedure to challenge such factual errors. According to Schepers, this inadequate process impinged upon a liberty interest guaranteed by the Fourteenth Amendment.

### A. Section 1983

To obtain relief for a civil rights violation pursuant to 42 U.S.C. § 1983, a plaintiff must show that (1) "defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under the color of state law. *J.H. Exrel Higgin v. Johnson*, 356 F.3d 788, 791 (7th Cir. 2003) (citation omitted). A procedural due process claim involves a two-step analysis: "First, we must determine whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then we assess what process was due." *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (citations omitted). Thus, for Schepers to prevail on his Section 1983 claim, he must, as an initial matter, establish that the IDOC's actions in this case resulted in a deprivation of a liberty or a property interest.[5]

#### 1. Liberty Interest

Schepers argues that erroneously listing a person as a violent offender or a sexually violent predator on a state-controlled registry is sufficiently stigmatizing to impinge a person's liberty interest. "It is well-settled that an individual has no cognizable liberty interest in his reputation; consequently, when a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) (internal citations omitted). Thus, in order to establish a deprivation of a liberty interest relating to a person's reputation, the Seventh Circuit

---

[5] As noted in the Plaintiff's briefing, the Plaintiff and the class do not argue that they have been denied a property interest under the Fourteenth Amendment (Dkt. 36 at 9). Thus, the argument is waived. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008) (a claim not raised below is forfeited).

employs the two-part "stigma plus" test articulated by the Supreme Court in *Paul v. Davis*, 424 U.S. 693 (1976). *See Brown v. City of Mich. City, Ind.*, 462 F.3d 720, 729-730 (7th Cir. 2006) (holding that there was no deprivation of a liberty interest because the plaintiff failed to establish that the requirements of the "stigma plus" test were satisfied). To prevail on a "stigma plus" claim, a plaintiff must show (1) damage or a stigma placed upon an individual's reputation and "'alteration of legal status' such as governmental deprivation of a right previously held, 'which, combined with the injury resulting from the defamation, justif[ies] the invocation of procedural safeguards.'" *Doyle*, 305 F.3d at 617 (quoting *Paul*, 424 U.S. at 708-09); *see also Dupey v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) ("[W]hen a state actor, casts doubt on an individual's 'good name, reputation, honor or integrity' in such a manner that it becomes 'virtually impossible for the [individual] to find new employment in his chosen field,' the government has infringed upon that individual's 'liberty interest to pursue the occupation of his choice.'").

### a.    Stigma Requirement

In regards to the first requirement of the "stigma plus" test, Schepers argues that the factual erroneous listing of himself, and members of the putative class, as sex or violent offenders or sexually violent predators imposes a serious stigma on their reputations. Schepers has some considerable support for this position. *See Chambers v. Colo. Dept of Corrs.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (stating that a prison inmate labeled as a sex offender is "replete with inchoate stigmatization"); *Neal v. Shimoda*, 131 F.3d 818, 830 (finding that there were "stigmatizing consequences on the attachment of the sex offender label" on prison inmates); *Branch v. Collier*, 2004 WL 942194, at *5 (N.D. Tex. Apr. 30, 2004) ("Being publicly labeled a sex offender despite never being convicted of such according to the applicable statute would

certainly result in public scorn).

Here, the parties agree that there exists no genuine issue of material fact as to Schepers being erroneously labeled a violent offender, a sexually violent predator, and being convicted of two rapes, instead of one. Additionally, it is not disputed that Schepers must register as a sex offender based upon his child exploitation conviction in 2006. Ind. Code § 11-8-8-4.5(a). IDOC argues that any factual error in a registry listing attributed to a current sex offender on the registry, like Schepers, would not be stigmatizing. The Court concludes otherwise. Erroneously labeling Schepers as a violent offender and a sexually violent predator is further stigmatizing to his reputation, regardless of the fact that he is already a sex offender. Indeed, common sense dictates that being labeled a sexually violent predator is worse than being labeled a sex offender. *See People v. David W.*, 733 N.E.2d 206, 210-11 (N.Y. 2000) ("More than name calling by public officials, the sexually violent predator label is a determination of status that can have a considerable adverse impact on an individual's ability to live in a community and obtain or maintain employment.") (emphasis added and quotations omitted).

          **b.**     **Alteration of Legal Status Requirement**

In addition to establishing that factual errors on the Registry harm Schepers' and members of the putative class' reputations, Schepers must show the inclusion of such errors in some form "alter[] or extinguish[] a right or status recognized under state law" to implicate a liberty interest. *Paul*, 424 U.S. at 711. Schepers argues that because he and class members would mistakenly be required to register on the Registry for life and be subject to registration burdens because of the attachment of a sexually violent predator label, an alteration of legal status occurs. To buttress this position, Schepers relies upon the Indiana Supreme Court's decision in *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009) to establish when an alteration of legal

status under the "stigma plus" test occurs. *Wallace* held that imposing a sex offender label on the plaintiff, based on crimes he committed before the registration law was in effect, violated the state constitution. In doing so, the court found the affirmative obligations to register substantially burdensome.

> The duties imposed on offenders are significant and intrusive, including allowing in-home personal visitation for verification of the offender's address,[Ind. Code §§ 11-8-8]-13, carrying a valid identification at all times, *id.* at -15, and for some offenders informing local law enforcement authorities of their plans to travel from their principal place of residence for more than 72 hours *id.* at -18. Further, the time periods associated with the Act are intrusive. Sexually violent predators must re-register for the rest of their lives; all other offenders must re-register annually for a minimum of ten years. *Id.* at -14, -19. All sex offenders who change residences must notify local law enforcement within seventy two hours. *Id.* at -11...[T]hrough the aggressive notification of their crimes, the Act exposes registrants to profound humiliation and community-wide ostracism. Further, the practical effect of this dissemination is that it often subjects offenders to vigilante justice which may include lost of employment opportunities, housing dissemination, threats, and violence...Considered as a whole the Act's registration and notification provisions impose substantial disabilities on registrants.

*Wallace*, 905 N.E.2d at 379-80; *see also Doe v. Pataki*, 3 F. Supp. 2d 456, 468 (S.D.N.Y. 1998) (finding similar registration requirements associated with the "sexually violent predator" status altered the legal status of all convicted sex offenders, thus implicating a liberty interest).

In the Court's view, the additional registration burdens placed on a registrant, such as Schepers, by being mistakenly labeled as a sexually violent predator alters that registrant's legal status, thus implicating a liberty interest. The state of Indiana, by statute, prohibits sexually violent predators from working in certain fields involving children. *See* Ind. Code § 35-42-4-10 (imposing work restrictions against offenders who are labeled "sexually violent predators" under Indiana law). Accordingly, errors existing on the Registry could negatively impact a registrant's future employment opportunities. *See Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) (recognizing a violation of a valid liberty interest "[w]hen an employee's good name, reputation,

9

honor, [or] integrity was called into question in a manner that ma[de] it virtually impossible for the employee to find new employment in his chosen field"); *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 603 (3d Cir. 1979). Courts have also recognized that the elevated burdens imposed only upon sexually violent predators, such as the stricter registering requirements and notification requirements, sufficiently alter their legal status.[6] *See Pataki*, 3 F. Supp. 2d at 468; *see also Branch*, 2004 WL 942194, at *6. Given these elevated burdens placed on registrants due to factual errors on the Registry, plaintiffs have a protected liberty interest that entitles them to procedural due process.[7]

### 2. The IDOC's Registry Appeal Process

Although Schepers has sufficiently alleged a deprivation of a liberty interest, the Court must consider whether that deprivation occurred without due process.[8] Even though Schepers has alleged a deprivation of a liberty interest, Schepers' argument ultimately fails because he and the class are afforded adequate due process by the IDOC. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted); *Wis v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to

---

[6] Failure to register in accordance with Indiana law subjects a convicted sex offender to criminal prosecution. Ind. Code § 11-8-8-19.

[7] In IDOC's Response brief, IDOC "concedes that a liberty interest would be created if an individual is erroneously placed on the Registry when that individual has not been convicted of a registerable offense." (Dkt. 47 at 11).

[8] During the time between the filing of Schepers Complaint (Dkt. 1) and the ruling on Schepers' Motion for Summary Judgment (Dkt. 35), IDOC codified a new administrative procedure for the registry called the "Sex and Violent Offender Registry Appeal Process" (Dkt. 53-2). This procedure came into effect on May 1, 2011. Therefore, for the purposes of the due process analysis, the Court will limit its focus to the new administrative procedures submitted by IDOC.

be heard are essential."). In order to determine what process is due an individual under a given circumstance, the Supreme Court instructs courts to weigh three factors: (1) "the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Doyle*, 305 F.3d at 618. The Court will consider the private and governmental interests first, followed by a discussion of the risk of error in procedures established by the IDOC.

### A.     Private Interest

Schepers argues that a significant private interest exists for registrants not to be erroneously labeled as sexually violent predators or violent offenders on the Registry by the IDOC. Schepers contends that the information published by the IDOC, if erroneous, imposes elevated burdens on current registrants, further stigmatizing their reputations, thus creating a significant private interest. *See Meza v. Livingston*, 607 F.3d 392, 402 (5th Cir. 2010) (finding the plaintiff had a significant interest in being free from sex offender registration because it "affects a substantial right…compel[ing] a serious deprivation of liberty and creat[ing] stigmatizing consequences") (citation omitted).

### B.     Government Interest

Under this factor of the balancing test, the Court must weigh the Government's interest. The government has a significant interest in rehabilitating sex offenders as well as monitoring sex offenders once they re-enter society. *See McKune v. Lile*, 536 U.S. 24, 33 (2002). The IDOC argues that it should not be required to institute additional hearings to registrants beyond those provided under the procedures of its appeal process. The IDOC contends it has an interest

in maintaining costs at a reasonable level while providing a constitutionally permissible appeal process for registrants seeking to appeal alleged factual errors on the Registry. *See Meza*, 607 F.3d at 403 (recognizing that the state has an interest in keeping the costs associated with providing notice of an individual's sex offender status as low as constitutionally permissible).

**C.     Risk of Erroneous Deprivation**

The last factor the Court will consider is the risk of erroneous deprivation. After evaluating the current administrative procedure set forth by the IDOC, the Court concludes the appeal process provided to current registrants on the Registry will lower the risk of erroneous deprivation. Before an appeal process begins, a registrant will be sent a "notice" and a "specimen" form[9] notifying the registrant of his or her requirement to register on the Registry and the information that will transmitted to the Registry (Dkt. 53-2 at 3). The IDOC's appeal process allows registrants to submit a written appeal letter to the Division of Registration and Victim Services to challenge the accuracy of the Registry's information (Dkt. 53-2 at 5). A registrant can move forward with an appeal on various grounds, such as by: (1) contending that no information be forward to local authorities to be published on the Registry; (2) contending that the information to be transmitted is not accurate; or (3) raising both of the above contentions in the same appeal letter (Dkt. 53-2 at 6). Once an appeal is sent to the IDOC, the Director of the Division of Registration and Victim Services reviews the appeal letter and all documentation supporting the appeal. Upon further review, the Director may request to interview the registrant

---

[9]A "notice" form is a written statement informing the registrant of his or her right to appeal information related to his or her placement on the Registry or the transmission of such information to the Registry. A "specimen" form provides the registrant with a photocopy of the information concerning the registrant that the IDOC intends to forward to local law enforcement for publication on the Registry (Dkt. 53-2 at 3).

or any person he or she believes is necessary in deciding the appeal.[10] After the review process is completed, the Director renders a decision.[11]

The risk of erroneous deprivation under the IDOC's appeal process is minimal. The registrants will have a meaningful opportunity to be heard through the submission of a written appeal letter. *See Henderson v. Ahitow*, 1995 WL 709254, at *2 (7th Cir. Nov. 30, 1995) ("Although written statements may provide less due process protection than oral statements, in prison disciplinary hearings written statements nonetheless provide adequate protection, at least where...the prisoner is literate in English and able to coherently present arguments in writing."); *see also Moody v. Miller*, 864 F.2d 1178-1180-81 (5th Cir. 1989). Additionally, if further information is needed, the Director may interview either the registrant or other individuals who may have information relevant to the appeal. Because the IDOC reviews a registrant's criminal offenses and compares them to Indiana's sex offender statutes to see if registration is applicable, any apparent errors should be correctable through the appeals process. Thus, there is minimal risk of erroneous deprivation in light of IDOC's procedures.

Balancing the *Mathews v. Eldridge* factors, the Court concludes that the IDOC's appeal process provided to Schepers and the class to challenge factual errors regarding information listed on the Registry is constitutionally sufficient under the due process clause. Schepers argues that the appeal process adopted by the IDOC fails to provide minimal due process in the form of a formal hearing. The Court is not persuaded by this argument. "Procedural due process does

---

[10] Any person consulted under the IDOC's appeal process may be placed under oath by a person authorize to administer oaths (Dkt. 53-2 at 7).

[11] According to the IDOC appeal process, an appeal will be decided within thirty days after the IDOC receives the appeal letter and any supporting documents. If an appeal is not decided within thirty days after it is received by the IDOC, then the appeal will be deemed denied. A registrant also may not appeal to the IDOC any changes that occur as a result of the appeal. (Dkt. 53-2 at 7-8).

not require a full blown adversarial hearing in every situation." *Toney-El v. Franzen*, 777 F.2d 1224, 1229 (7th Cir. 1985). In *Toney-El*, the plaintiff sued the Illinois Department of Corrections, among others, for constitutional violations of the Fourteenth Amendment when the Department of Corrections miscalculated his release date. *Id.* at 1226. The plaintiff challenged the state procedures underlying the calculation error. *Id.* at 1228. The Seventh Circuit concluded that while plaintiff had a liberty interest in being released from prison before the end of his term for good behavior, he was given adequate due process. *Id.* at 1227. In holding that the calculation process for determining release dates was constitutionally sufficient, the Seventh Circuit stated:

> [T]he Department of Corrections has an interest in mathematically calculating custody and release dates. The function involves a mere mathematical application of credits awarded by a judge and credits awarded by a statute. An additional or substitute administrative hearing...would entail substantial administrative and fiscal burdens through the expenditure of time and use of personnel to evaluate a mathematical calculation and would provide little additional protection to an inmate than the present procedures provides.

*Id.* at 1229.

Like in *Toney-El*, a formal administrative hearing for registrants alleging factual errors on the Registry would provide little additional protection to these registrants. Moreover, the review of Indiana statutes with a registrant's criminal offenses in determining registration labels is a straightforward matter where a written appeal is sufficient. *See Califano v. Yamasaki*, 442 U.S. 682, 695-97 (1979) (finding that requests for reconsideration of overpayment determination for social security benefits involve relatively straightforward matters for which written review was adequate). Because the IDOC's interest in monitoring sex offenders once they re-enter society is significant and the risk of erroneous deprivation is minimal, in light of the IDOC's appeal process, the Court concludes that Schepers and the class are provided with adequate due

process.[12]

### 3. Standing

Upon reviewing each party's briefs in regards to the Plaintiff's Motion for Summary Judgment (Dkt. 35), the parties did not thoroughly address the issue of standing in detail as it applies to the present case. Standing is a jurisdictional matter that may be raised at any time, and that the court must determine even if the parties fail to raise it. *Transamerica Ins. Co. v. South*, 125 F.3d 392, 396 (7th Cir. 1997). To satisfy the standing requirement a party must show: "(1) that [it] suffered an injury in fact (2) that is fairly traceable to the action of the defendant and (3) that will likely be redressed with a favorable decision." *Kathrein v. City of Evanston, Ill.*, 636 F.3d 906, 914 (7th Cir. 2011). Certification of a class changes the standing aspects of a suit, because "a properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff." *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002); *see also Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir. 2009) ("The named plaintiff who no longer has a stake may not be a suitable class representative, but that is not a matter of jurisdiction and would not disqualify him from continuing as class representative until a more suitable member of the class was found to replace him.") (citation omitted).

Here, Schepers, as the named plaintiff, lacks standing on his own to represent the class because the factual errors on his Registry listing that he asserts as injuries have been corrected by the IDOC. Because the factual errors on his Registry listing have been cured by the IDOC, the Court finds that Schepers no longer has a stake in the outcome of this lawsuit. Under the

---

[12] The IDOC also argued that any factual errors contained in the Registry maintained by the IDOC were the result of random and unauthorized conduct, and therefore, "the plaintiff must either avail [himself] of post-deprivation remedies or demonstrate that available remedies are inadequate," in demonstrating that due process was insufficient. *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 805 (7th Cir. 2010). The Court will not analyze the IDOC's argument regarding "random and unauthorized" conduct in detail in light of the Court's ruling that the IDOC's appeal process provides the plaintiff's adequate due process.

decisions of *Payton* and *Kohen*, Schepers' lack of standing is not fatal to the class action suit, provided that a class member with standing can replace him. At this point in litigation, a suitable class representative would have had an opportunity to avail himself of the IDOC's appeal process before setting forth any alleged constitutional violation. Therefore, the Court orders the parties to submit to the Court briefs outlining the issues of standing and ripeness in this case as they apply to Schepers as the named plaintiff of the class within 14 days of this ruling.

## IV.  **CONCLUSION**

For the aforementioned reasons, Schepers' Motion for Summary Judgment (Dkt. 35) is **DENIED.** The parties are ordered to submit to the Court briefs outlining the issues of standing and ripeness in this case as they apply to the named plaintiff of the class within 14 days of this ruling.

SO ORDERED:

Date: 09/22/2011

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Betsy M. Isenberg
INDIANA ATTORNEY GENERAL
betsy.isenberg@atg.in.gov